AO 106 (Rev. 04/10)  Application for a Search Warrant

**FILED**

MAY 0 9 2019

CLERK US DISTRICT COURT
SOUTHERN DISTICT OF CALIFORNIA
BY                           DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   **19MJ1904**
Samsung Cellular Phone, IMEI: 353411064979901 )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
SEE ATTACHMENT A-1

located in the _____ SOUTHERN _____ District of _____ CALIFORNIA _____ , there is now concealed *(identify the person or describe the property to be seized):*
SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
| --- | --- |
| 8 USC 1324 | ALIEN SMUGGLING |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alexander Djokich, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/9/19

_____
*Judge's signature*

City and state:  San Diego, California

HON. KAREN S. CRAWFORD
*Printed name and title*

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), Attempted Transportation of Illegal Aliens is a Black Samsung Cellular Phone, IMEI: 353411064979901 ("Target Telephone 1")

The Target Device is currently being stored in the evidence room at the Imperial Beach Border Patrol Station located at 1802 Saturn Blvd. San Diego, CA 92154

## **ATTACHMENT B**

Authorization to search Target Device #1 described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device #1 for evidence described below. The seizure and search of the Target Device #1 shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 5, 2019 to May 4, 2019:

    a.    tending to identify attempts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of aliens from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the smuggling of aliens from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling aliens from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii), Attempted Transportation of Illegal Aliens.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Alexander Djokich, Border Patrol Agent with the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol, having been duly sworn, depose and state as follows:

### I
### INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant in furtherance of an alien smuggling investigation conducted by United States Border Patrol for the following target property: Black Samsung Cellular Phone identified by IMEI: 353411064979901 (hereinafter "Target Telephone 1") and a silver IPhone SE Cellular Phone IMEI: 35659608135046 (hereinafter "Target Telephone 2"), as described in Attachment A-1 and A-2 respectively. The Target Telephones were seized following the arrest of defendant Hector SANCHEZ on April 4, 2019.

2.     At the time of his arrest, SANCHEZ had possession of the two Target Telephones, which were seized from him after he was arrested by Border Patrol Agents for Attempted Transportation of Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), in the Southern District of California (the "Target Offense"). Based on the information below, there is probable cause to believe that the Target Telephones will produce evidence of the Target Offenses, as described in Attachments B-1 and B-2. The Target Telephones are currently in the possession of the United States Border Patrol, Imperial Beach Station located at 1802 Saturn Blvd, Imperial Beach, California 92154.

3.     The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics and immigration violations, including the Target Offense. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a Search Warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause.

//

## II.

## AFFIANT'S EXPERIENCE AND TRAINING

4.    I am a Border Patrol Agent of the Bureau of Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed by the USBP since 2010, and am currently assigned to the Imperial Beach Station Targeting and Analysis Unit ("TAU"). TAU is responsible for investigating, arresting, and prosecuting criminal smuggling organizations that utilize the Southern District of California as an operational corridor. These investigations are complex and involve primarily mid-level criminal smuggling organizations. TAU Agents deploy in plainclothes attire and drive unmarked agency vehicles.

5.    During my tenure as a U.S. Border Patrol Agent, I have participated in the investigations of a number of criminal smuggling organizations, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments of persons for alien and narcotics smuggling including drivers, narcotic distributers, foot guides, and load house operators.

6.    In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement of illegal entry of illegal aliens into the United States; the smuggling of illegal aliens into the United States; the transportation and harboring of illegal aliens within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry and/or remain in the United States.

7.    Through my training and experience, I have gained a working knowledge and insight into the typical workings of criminal organizations. I have also gained extensive information as to the normal operational habits of persons who make their living as alien and narcotics smugglers. Through my training, experience, and discussions with other experienced criminal investigators, I have become familiar with the behavior, speech, routes, and methods of operations of criminal organizations, to avoid detection and apprehension by law enforcement officers.

2

8.      Through the course of my training, investigations, work experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals, and they do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities.  As a part of the TAU, I have seen numerous telephones being used by load drivers to communicate with smugglers. Typically, load drivers transporting aliens within the United States are in telephonic contact with co-conspirators immediately prior to and following the entry of unlawful aliens into a load vehicle, at which time they receive instructions on where and when to pick up the unlawful aliens and where to deliver them.

9.      Based upon my training and experience as a Border Patrol Agent, and consultations with law enforcement officers, I submit the following:

a.      Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, email, Internet, social media applications, and text and voice messages.

b.      Alien smugglers will use cellular telephones because they are able to monitor the progress of their illegal cargo while the conveyance is in transit.

c.      Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations within the United States.

d.      Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.      Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports of Entry within the United States.

f.      Alien smugglers will often use cellular phones and smart devices to guide illegal aliens who are crossing into the United States, providing them instructions as

3

to where to go and what to do during a smuggling event.  This is often done from over watch positions on high ground in Mexico or at the border fence.  This allows smugglers to remotely control the actions of the smuggled aliens, while insulating themselves from criminal prosecution.

g.      Conspiracies involving alien smuggling often generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators.

10.     Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers.  Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.  Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11.     Based upon my training and experience as a Border Patrol Agent, and consultations with law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training and education, I have learned that searches of cellular/mobile telephones associated with smuggling investigations yield evidence:

a.      tending to identify attempts to smuggle aliens from Mexico into the United States;

//

//

4

b.     tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of aliens from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in the smuggling of aliens from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the smuggling aliens from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III

## STATEMENT OF PROBABLE CAUSE

12.     On May 4, 2019, Border Patrol Agent ("BPA") Scott Pair was assigned to the Imperial Beach Border Patrol Station's area of responsibility. At approximately 9:05 a.m., he observed a black Nissan Altima driving westbound from Hollister and Monument. Hollister and Monument is an intersection approximately 4 miles west of the San Ysidro, California, Port of Entry, and 300 yards north of the United States/ Mexico International Boundary fence. The Nissan Altima immediately grabbed his attention because the music was playing at an unusually loud volume with its windows rolled down. As it drove past his location, Agent Pair observed that the driver of the vehicle was wearing a black shirt and had a tattoo on his neck. The black Nissan Altima was driving westbound on Monument Road towards an area known to Border Patrol Agents as "The Iron Gates." The Iron Gates is notoriously used by smugglers to pick up illegal aliens.

13.    At approximately 9:10 a.m.; Border Patrol Agent Pedro Carrera, who was at the Iron Gates, relayed via service radio that he had a visual of a black Nissan Altima matching the description driving up to Spooner's Mesa on a road that is for authorized vehicles only. Moments later, it was relayed via service radio that the Nissan Altima crashed into the secondary fence in an area known to Border Patrol Agents as "Goat Canyon" and the driver attempted to flee south into Mexico.

14.    While performing linewatch duties, Supervisory Border Patrol Agent Javier A. Zuniga responded to a scene of an accident and arrest at the south end of an area known to Border Patrol Agents as "Goat Canyon," within the Imperial Beach Station's area of responsibility. Prior to arriving on scene, via service radio, BPA John Kulakowaski broadcasted he was pursuing a fleeing subject on foot, from the scene of a vehicle which had crashed into the secondary border fence, which runs parallel to the international border with Mexico. BPA Kulakowski reported the subject, later identified as CASTRO, Edgar, (AKA: Hector SANCHEZ) was being non-compliant and physically evading arrest.  Due to his active resistance and not being compliant with BPA Kulakowski's verbal commands to stop, BPA Kulakowski deployed his service issued Oleoresin Capsicum (O.C.) spray to gain compliance in order to detain the subject safely and subsequently arrest the subject for conspiracy to smuggle aliens.

15.    I arrived to render assistance at approximately 9:40 a.m.  The subject was already restrained within a Border Patrol service vehicle and receiving decontamination services from BPA Kulakowski due to having been sprayed with O.C.   During questioning regarding his physical health condition, the subject, CASTRO, Edgar, (AKA; Hector SANCHEZ) made several utterances to BPA Javier A. Zuniga due to experiencing a serious vehicle accident and being exposed to O.C. spray.   He said he was sorry and explained that he had been in the area to help out his immediate family financially by attempting to pick up illegal aliens in the border area and smuggle them out of the area by transporting them within the vehicle, a black 2010 Nissan Altima Hybrid (License Plate: CA 8JNM353) (the "Vehicle"). This was the Vehicle he had just

1  crashed into the secondary fence.  He made these verbal statements, in English, on his

2  own and we, the agents on scene, repeatedly asked him to calm down and stop moving,

3  due to possible serious injuries resulting from the vehicle accident he had just

4  experienced.

5       10.  Due to the extent of the subject's numerous injuries, he was transported to

6  the hospital for treatment and is currently being guarded by Border Patrol Agents. The

7  following day, I used a mobile DHS biometrics system to determine that the subject's true

8  identity is Hector SANCHEZ, Jr., born August 21, 1989.  I determined that SANCHEZ

9  is a United States citizen.

10       11.  While SANCHEZ was being searched, Target Telephone 1 and Target

11  Telephone 2 were found in his possession.   On May 6, 2019, a complaint was filed

12  charging SANCHEZ with Attempted Transportation of Illegal Aliens, in violation of 8

13  U.S.C. § 1324(a)(1)(A)(ii), in the Southern District of California, in case number 19-MJ-

14  01827-KSC.

15       13.  Based on my experience investigating alien smugglers, SANCHEZ may have

16  used the Target Devices to coordinate with other co-conspirators regarding the purpose of

17  his travel to the area between the primary border fence and the secondary border fence in

18  "Goat Canyon;" when Material Witnesses would be brought to the Vehicle; the location

19  of the Vehicle; and where SANCHEZ would go once the Material Witness(es) were in the

20  Vehicle.

21       14.  Based on my experience and training, consultation with other law

22  enforcement officers experienced in alien smuggling investigations, and all the facts and

23  opinions set forth in this affidavit, I further believe that information relevant to the alien

24  smuggling activities and his co-conspirators, such as recent calls made and received,

25  telephone numbers, contact names, electronic mail (email) addresses, appointment dates,

26  text messages, email messages, messages and posts from social networking sites, pictures,

27  and other digital information may be stored in the memory of the Target Devices and may

28  identify other persons involved in alien smuggling activities.

15.     Alien smuggling conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States.  Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States.  Given this, I request permission to search the Target Devices for items listed in Attachments B-1 and B-2 beginning on March 5, 2019 and up to and including May 4, 2019.  The date range for the search is based on SANCHEZ's statement that he was in Goat Canyon to help his family financially by attempting to pick-up illegal aliens in the border area and smuggle them out of the area in his Vehicle.

**IV**

**METHODOLOGY**

16.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the devices.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

8

that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the Target Devices and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## V
## CONCLUSION

19. Based on all of the facts and circumstances described above, my training and experience, and consultations with other law enforcement officers, there is probable cause to conclude SANCHEZ utilized the Target Devices to attempt to transport illegal aliens in violation of Title 8, United States Code, Section 1324.

20. Because the Target Devices were promptly seized during the investigation of Defendant's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by SANCHEZ continues to exist on the Target Devices. As stated above, the date range for this search is from March 5, 2019 to May 4, 2019.

21. Based upon my experience and training, consultation with other agents in smuggling investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachments B-1 and B-2 are likely to be found in the property to be searched described in Attachment A-1 and A-2. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law

enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B-1 and B-2.

I declare under penalty of perjury that the foregoing is true and correct.


Alexander Djokich
Border Patrol Agent
U.S. Border Patrol


Sworn to and subscribed before me this 9th day of May, 2019.


HON. KAREN S. CRAWFORD
United States Magistrate Judge